UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | |
|---|---|
| GARY VERNON PAUL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Civil Action No. 6:11-CV-119-JMH |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | )   **MEMORANDUM OPINION AND ORDER** |
| SECURITY, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

** ** ** ** **

This matter is before the Court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of his application for Disability Insurance Benefits [DE 10, 11].[1] Plaintiff Paul has also filed a response in opposition to the Commissioner's Motion for Summary Judgment [DE 12]. The Court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed for disability benefits on March 8, 2007, alleging an onset of disability of March 27, 2006, due to a bulging disc in his back; disc disease; sleep disorder; shoulder problems; post-traumatic stress disorder ("PTSD"); and constant pain in most

---

[1]  These are not traditional Rule 56 motions for summary judgment.  Rather, it is a procedural device by which the parties bring the administrative record before the Court.

body joints.  [AR at 203].  A hearing on his application was conducted on August 18, 2009 [AR 54], and his application was denied by Administrative Law Judge ("ALJ") Lawrence on January 14, 2010 [AR 23].  Plaintiff timely pursued and exhausted his administrative remedies, and this matter is ripe for review and properly before this Court under § 205(c) of the Social Security Act, 42 U.S.C. § 405(g).

Plaintiff was forty-seven-years-old at the time of the ALJ's final decision.  [*See* AR 97].  He is a high school graduate and served in the Army National Guard from 1983 to 2006.  [AR 59].  His service in the National Guard included a seven-month deployment to Iraq and he received a medical discharge from the Guard due to his back problems in November 2006.  [AR 743].  While serving in the National Guard part-time, Plaintiff performed other work as a construction carpenter, a security guard and a truck driver.  [AR 305].

Plaintiff underwent a lumbar fusion in March 2006, due to persistent severe low back and leg pain.[2]  [AR 378].  In December 2006, Plaintiff began general treatment with Dr. Walter Shank at the Veteran's Hospital in Lexington, Kentucky.  Shank was initially

---

[2]  While Plaintiff's memorandum in support of his Motion for Summary Judgment states that Plaintiff underwent back surgery at the Eisenhower Army Medical Center in Augusta, Georgia, the administrative record indicates that Plaintiff's back surgery was actually performed by Dr. Keiffer at Central Baptist Hospital in Lexington, Kentucky.

suspicious of Plaintiff's complaints and required that Plaintiff sign a narcotics contract before he would agree to prescribe pain medication. Shank also noted that his examination of Plaintiff was "notable for dramatic embellishment." Plaintiff argues that Dr. Shank's opinion changed after he learned the actual severity of Plaintiff's back problems. As a basis for this contention, Plaintiff relies upon the VA's determination of partial disability in July 2008 [AR 268] and total disability in March 2009. [AR 1236].

On April 24, 2007, Dr. Tun Nyunt examined Plaintiff on behalf of the Social Security Administration. [AR 419]. Dr. Nyunt diagnosed Plaintiff with chronic lumbar radiculopathy, status-post surgery; chronic shoulder pain; PTSD with insomnia; and arthritis of bilateral knee and ankle joints. [AR 422]. In his report, Dr. Nyunt stated that Plaintiff could sit and stand for up to ten minutes, walk less than one block and lift up to ten pounds. [AR 420]. It is unclear from the record, however, whether Dr. Nyunt was making his own assessment or simply reporting Plaintiff's complaints. On February 11, 2009, Plaintiff was examined by Dr. Omar Chavez, another agency physician. [AR 1056]. Dr. Chavez noted that Plaintiff had decreased range of motion in his lumbar spine and in his shoulders. [AR 1058].

In March of 2007, Dr. Chrystal Edgeschoeder performed a psychiatric evaluation of Plaintiff for the purpose of providing an

3

opinion regarding Plaintiff's eligibility for VA disability benefits. [AR 606]. She assigned a global assessment of functioning (GAF) score of 55 and determined that, although Plaintiff's ability to work was impaired, there was not total occupational and social impairment.[3] [AR 615]. Plaintiff underwent another psychological evaluation at the VA in March of 2009, in which he demonstrated below average intelligence and reported extreme difficulty with household chores and even the basic activity of self-grooming. [AR 1159]. At the ALJ's request, Christopher Catt, Psy. D., performed a psychological evaluation of Plaintiff on July 10, 2009. [AR 1438]. While Dr. Catt found that Plaintiff had slowed motor activity and evidenced pain, he concluded that Plaintiff was embellishing his symptoms, based on the results of the Rey 15-Item Memory test.[4] He also described Plaintiff as "passive and manipulative toward the interview process." [AR 1440]. Catt noted that Plaintiff was able to recite his social security number and date of birth from memory. [AR 1438]. Dr. Catt diagnosed malingering on the Rey 15, pain

---

[3] "GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning. . . . A GAF score may help an ALJ assess mental RFC, but is not raw medical data." *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 503 (6th Cir. 2006). A GAF score of fifty-one to sixty suggests moderate symptoms. *Collins v. Comm'r of Soc. Sec.,* 357 F. App'x 663, 665 (6th Cir. 2009).

[4] Because Plaintiff's performance on the Rey 15-Item Memory Test is not material to the outcome of this appeal, the Court will not evaluate Plaintiff's claims regarding the validity of the test.

disorder, and major depressive disorder and assigned a GAF score of 55. [AR 1441].

ALJ Lawrence issued her decision on January 14, 2010. She found that the medical evidence established the following combination of severe impairments: "back pain status post back fusion surgery, sleep disorder, bilateral shoulder pain, bilateral knee pain, gastroesophogeal reflux disease, hyperlipidemia, post traumatic stress disorder and depression." [AR 12]. The ALJ found these impairments to be severe in combination within the meaning of the regulations, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1. [AR 13]. The ALJ concluded that Plaintiff was not disabled and retained the residual functional capacity (RFC) to perform a wide range of light work, including his past work as a security guard. [AR 21].

## II.  OVERVIEW OF THE PROCESS

The ALJ, in determining disability, conducts a five-step analysis:

1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

2. An individual who is not working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)," then he is disabled regardless of other factors.

4.    If a decision cannot be reached based on current
      work activity and medical facts alone, and the
      claimant has a severe impairment, then the
      Secretary reviews the claimant's residual
      functional capacity and the physical and mental
      demands of the claimant's previous work.  If the
      claimant is able to continue to do this previous
      work, then he is not disabled.

5.    If the claimant cannot do any work he did in the
      past because of a severe impairment, then the
      Secretary considers his residual functional
      capacity, age, education, and past work experience
      to see if he can do other work.  If he cannot, the
      claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th

Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)).  "The burden of

proof is on the claimant throughout the first four steps of this

process to prove that he is disabled."  *Id.*  "If the analysis

reaches the fifth step without a finding that the claimant is not

disabled, the burden transfers to the Secretary."  *Id.*

**III. STANDARD OF REVIEW**

In reviewing the ALJ's decision to deny disability

benefits, the Court may not try the case *de novo*, nor resolve

conflicts in the evidence, nor decide questions of credibility.

*Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th

Cir. 1994).  Instead, judicial review of the ALJ's decision is

limited to an inquiry into whether the ALJ's findings were

supported by substantial evidence, 42 U.S.C. § 405(g), *Foster v.*

*Halter,* 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ

employed the proper legal standards in reaching her conclusion.

*See Landsaw v. Sec'y of Health & Human Servs.,* 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip,* 25 F.3d at 286.

## IV. ANALYSIS

### A. THE VA'S DISABILITY RATING AND THE TREATING PHYSICIAN RULE

Plaintiff argues that the ALJ improperly rejected the opinions of his treating physicians and failed to provide an adequate rationale for not giving those opinions controlling weight. Plaintiff has not, however, identified the treating source opinions to which he refers. Rather, Plaintiff relies on the one-hundred-percent disability rating issued to him by the Veteran's Administration in March 2009 [AR 1236]. Plaintiff suggests that, because he received treatment from VA doctors and the VA found him to be disabled pursuant to its standards, the ALJ erred in not finding him to be disabled under Social Security law. For the reasons that follow, the Court does not agree.

While the Sixth Circuit has not directly commented on the effect a VA disability rating has on a Social Security disability determination, several other circuits have concluded that VA rating decisions must at least must be taken into consideration. *See e.g., McCartey v. Massanari,* 298 F.3d 1072, 1075-76 (9th Cir. 2002)

(holding that the ALJ must at least consider the VA's finding in reaching his or her decision); *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001) (finding that a VA disability rating is entitled to a certain amount of weight and that an ALJ is required to consider it); *Baca v. Dep't of Health & Human Servs.,* 5 F.3d 476, 480 (10th Cir. 1993) (holding that, although a VA disability rating is not binding on an ALJ, such ratings are entitled to some weight and must be considered).  The issue of disability as defined by the Social Security Act, however, is a question reserved to the Commissioner and determinations by other agencies are not binding. *See Allen v. Comm'r of Soc. Sec.,* 561 F.3d 646, 652 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(e)); *Gaskin v. Comm'r of Soc. Sec.,* 280 F. App'x 472, 477 (6th Cir. 2008) (plaintiff not entitled to Social Security disability benefits even though he received Worker's Compensation due to a back injury).  Claimants under the Social Security Act are subject to a more rigorous standard than those under the Veteran's Administration, and thus the VA's rating decision is not necessarily controlling.  *See Pearson v. Astrue,* 271 F. App'x 979, 981 (11th Cir. 2008).

In her January, 2010 opinion, the ALJ acknowledged that the VA had issued Plaintiff a disability rating of one-hundred-percent. [AR 18].  The ALJ's decision to deviate from the VA's finding, however, is supported by substantial evidence in the record. Further, the ALJ gave a reasoned analysis for her decision not to

8

decide in accordance with the VA. She noted that Plaintiff's treating physicians at the VA had significant concerns regarding Plaintiff's credibility, yet inexplicably awarded him a one-hundred percent disability rating. *Id*. Like several of Plaintiff's treating (and non-treating) physicians, ALJ Lawrence had serious questions regarding the validity of Plaintiff's claims. [*See* AR 19-20]. Ideally, an ALJ would articulate more clearly her reasons for disregarding a one-hundred-percent disability rating issued by the Veteran's Administration. Nonetheless, it is apparent that the ALJ's concerns regarding Plaintiff's credibility, as well as conflicting medical evidence in the record, led her to conclude that Plaintiff was not disabled, as envisioned under the Social Security Act. This was not unreasonable, considering the record before her.

In reaching her decision, the ALJ considered the treatment notes of Dr. Keiffer, Plaintiff's surgeon and former treating physician. [AR 15]. After performing a lumbar fusion on Plaintiff in March 2006, Dr. Keiffer found that Plaintiff was making progress and opined, in response to a Department of Transportation inquiry, that Plaintiff was capable of driving an eighteen-wheel truck without difficulty. [AR 398]. The ALJ also considered reports from various treating and non-treating sources that suggested malingering on the part of Plaintiff. [AR 15-20]. In March of 2007, Plaintiff's primary care provider at the VA, Dr. Shank, noted

that Plaintiff was "notable for dramatic embellishment-marked wincing with gentle palpation over entire body . . ." [AR 674]. In June of 2007, Shank's notes indicated that it was "somewhat difficult for [him] to discern how much of [Plaintiff's] complaints are real vs. embellished." [AR 666].

Plaintiff contends, however, that there were no further suggestions by treating sources that Plaintiff was malingering following the issuance of the VA's partial disability rating in July 2007. This is simply not the case. Review of the administrative record reveals that, even after Plaintiff was awarded disability benefits from the VA, treating sources continued to question the legitimacy of his complaints. Based upon a March 2009 examination, Plaintiff's pain management physician stated that Plaintiff had "nonspecific findings and non-organic nature of pain as Waddle's (sic) signs are positive and nondermatomal pattern of pain inconsistent with the MRI exams." [AR 1177]. When asked to demonstrate his range of motion during an October 2008 physical therapy examination, Plaintiff exhibited significantly limited shoulder range of motion. [AR 1205]. The therapist noted, however, that he observed Plaintiff raise his arms much higher when doffing and donning his shirt before and after the exam. *Id.* The ALJ also found that Plaintiff's subjective complaints of pain were markedly disproportionate to the results of objective testing. *See* [AR 948] (x-ray revealed no abnormalities in shoulders and feet);

10

[AR 670] (April 2007 lumbar MRI showed only mild disc bulging – no evidence of spondylolisthesis or stenosis); [AR 810] (MRI revealed only mild tendinosis and degenerative arthritis in both shoulders); [AR 892] (nerve conduction study of both legs was normal); and [AR 1225] (x-rays of both knees was normal).

The ALJ also determined that Plaintiff's mental impairments were not sufficiently severe to render him unable to work. The ALJ based her determination, in large part, on what she concluded to be evidence of malingering. Upon review of the record, the ALJ found that Plaintiff's demonstrated mental functioning grew progressively worse upon each subsequent examination, going from average intelligence and memory to borderline mental functioning. [*See* AR 422 (Nyunt exam); AR 437 (Edgeschoeder exam); AR 1058 (Chavez exam); and AR 1438 (Catt exam). The ALJ found this suspicious based on the fact that Plaintiff previously demonstrated average intelligence and reported getting B grades in school. Further, Plaintiff's ability to recall information and respond to questions during his administrative hearing suggests that he was not giving full effort during the psychological evaluations in which he demonstrated below average mental functioning. [*See* AR 54-72]. The ALJ also noted that during a mental health screen in 2006, Plaintiff screened negative for PTSD.

Ultimately, while a VA disability rating may be entitled to some consideration in a Social Security adjudication, it is not

necessarily controlling.  Here, there is substantial evidence to support the ALJ's conclusion that Plaintiff was not disabled as defined under the Social Security Act.  Further, the ALJ acknowledged the VA disability rating and provided good reasons for declining to follow it.

Plaintiff's argument concerning the "treating physician rule" fails as well.  The rule provides that, typically, an ALJ will assign greater weight to the opinion of a source who has provided treatment to a claimant.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).  Here, Plaintiff argues that the ALJ violated this rule, but does not point to any opinion that would receive the benefit of the rule.  The only treating source whose "opinion" is mentioned in Plaintiff's memorandum is Dr. Shank.  Plaintiff points out that, on March 15, 2007, Dr. Shank wrote:

> PE notable for dramatic embellishment - marked wincing with gentle palpation over entire body including tender points.  MS exam negative for synovitis or effusion.  No hot swollen joints.  Neuro exam nonfocal.  Motor testing remarkable for poor effort.  Will proceed with MRI l-spine, arthritis serology, CK, UDS, etc., per note and advised patient to bring in previous records from local neurosurgeon for review.

Plaintiff contrasts this with Shank's statement on February 25, 2009, in which he described Plaintiff as "a thin slow-moving white male with a blunted affect."  Further, Plaintiff points out, Shank "observed that very gentle palpation of all trigger points produced dramatic wincing."  First, Shank's characterization of Plaintiff as "a thin slow-moving" male is not a medical judgment and the ALJ was

12

not obligated to give the statement controlling weight or to provide good reasons for not doing so. *See Bass v. McMahon,* 499 F.3d 506, 510 (6th Cir. 2007). Further, while Plaintiff seems to believe that "dramatic wincing" upon "very gentle palpation" is supportive of his claim, the ALJ reasonably concluded that this was further evidence of malingering on the part of Plaintiff.

**B.    THE ALJ'S RFC WAS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff also argues that the ALJ improperly found that he could return to past work because she adopted a residual functional capacity (RFC) finding that was not supported by substantial evidence. ALJ Lawrence adopted the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can do no more than occasional climbing of ladders, stooping, and crouching; he must avoid vibrations; and he has limited but satisfactory or mild difficulty in dealing with the public, responding to changes in the work setting, and maintaining attention and concentration.

[AR 13-14]. Plaintiff argues that the ALJ erred because neither the physical nor mental aspects of the ALJ's RFC were as limiting as the restrictions assessed by any of the treating, examining or consulting sources. RFC is an assessment of the most a claimant can do, despite his or her limitations, and its formulation is the ALJ's responsibility. 20 C.F.R. § 404.1545. Accordingly, the ALJ is not bound by any specific medical opinion and should base a claimant's RFC on "all of the relevant medical and other evidence." *See id.* Plaintiff argues that the ALJ's RFC was erroneous because

13

it was not as limiting as the restrictions assessed by Drs. Nyunt, Chavez or Catt. None of these three were treating sources, thus, they were not entitled to controlling weight. Further, it is unclear from the record whether the function-related statements made by Dr. Nyunt constituted his own opinion or Plaintiff's subjective report. [AR 420]. According to Plaintiff's own account of the facts, Dr. Chavez did not render an opinion of Plaintiff's functional abilities. Rather, Chavez noted that Plaintiff had significant range of motion limitations. [AR 1058]. This finding does not conflict with the ALJ's RFC. And although Plaintiff contends that the RFC was less restrictive than the limitations suggested by Dr. Catt, Plaintiff fails to state what those limitations are. While Dr. Catt reported that Plaintiff appeared to be in pain and demonstrated slowed motor activity, it does not appear that Catt rendered an opinion regarding Plaintiff's ability to engage in functional activity. [AR 1440].

Based on the record as a whole, ALJ Lawrence's RFC is supported by substantial evidence. Dr. Keiffer, Plaintiff's former treating physician, felt that Plaintiff was functioning well enough to drive an eighteen-wheel truck. The physical and mental RFCs rendered by agency consultants are also similar to the ALJ's RFC. [AR 766, 1245, 1263]. Further, the administrative record is replete with evidence of Plaintiff's submaximal efforts during physical and mental evaluations. ALJ Lawrence also had the benefit

14

of observing and talking to Plaintiff during his hearing and was thus able to evaluate Plaintiff's credibility in person. Based on all of the evidence available to her, the ALJ concluded that Plaintiff's reports of pain and inability to function were simply inconsistent with his medical history and the results of objective testing. Accordingly, the ALJ's RFC was based on substantial evidence and will not be disturbed.

C. **THE HYPOTHETICAL POSED TO THE VE WAS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Finally, Plaintiff argues that the ALJ committed reversible error in relying on a hypothetical that did not accurately describe Plaintiff. Specifically, Plaintiff argues that, in the hypothetical posed to the vocational expert (VE), the VE was asked to assume that Plaintiff's ability to deal with the public and to respond to change in a work setting was limited, but satisfactory. Plaintiff argues that the ALJ clearly intended to rely on the opinions of consulting physicians, Cutler and Stodola, who agreed that Plaintiff had moderate restrictions in dealing with the public and responding to change. The ALJ was not required, however, to incorporate the exact language used by treating, examining or consulting sources. *See Parks v. Soc. Sec. Admin.,* 413 F. App'x 856, 865 (6th Cir. 2011). Further, hypotheticals need only include the limitations that the ALJ deems credible and simply "'must accurately portray a claimant's physical and mental impairments.'" *Id.* (citing *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 516 (6th

15

Cir. 2010)). Plaintiff provides no case law or evidence in the record to suggest that the ALJ's hypothetical failed to describe Plaintiff accurately. Though he argues that the ALJ committed reversible error, Plaintiff does not attempt to explain the significance of the ALJ's use of "moderate restrictions" as opposed to "limited, but satisfactory" ability. Based on all of the evidence before the ALJ and Plaintiff's failure to expound upon what he characterizes as reversible error, the Court finds that the ALJ's hypothetical was based on substantial evidence.

**V. CONCLUSION**

For the foregoing reasons, we **DENY** the plaintiff's Motion for Summary Judgment [DE 10] and **GRANT** the defendant's Motion for Summary Judgment [DE 11].

This the 15th day of November, 2011.



**Signed By:**

_Joseph M. Hood_

**United States Senior Judge**